UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CFMOTO Powersports, Inc.,

                Plaintiff,

v.

United States of America; Janet Napolitano, Secretary of Homeland Security, Customs and Border Patrol; and Lisa P. Jackson, Administrator, United States Environmental Protection Agency,

                Defendants.

Civ. No. 10-3279 (RHK/JJG)
**MEMORANDUM OPINION AND ORDER**

---

Boris Parker, Parker & Wenner, Minneapolis, Minnesota, for Plaintiff.

Matthew R. Oakes, U.S. Department of Justice, Washington, DC, and Friedrich A. P. Siekert, U.S. Attorney's Office, Minneapolis, Minnesota, for Defendants.

---

**INTRODUCTION**

In this action, Plaintiff CFMOTO Powersports, Inc. ("CFMOTO") has sued the United States, the Secretary of Homeland Security, Customs and Border Patrol, and the Administrator of the Environmental Protection Agency (collectively, "the Government" or "the United States"). The dispute arose from the seizure of several hundred vehicles imported into the country by CFMOTO in April and May of 2009 due to alleged violations of the Clean Air Act ("CAA"). Since that time, CFMOTO has made attempts to challenge the Government's action and seek administrative relief but the vehicles

remain detained, leading CFMOTO to commence the instant action. The United States has now moved to dismiss the case for lack of subject-matter jurisdiction. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

CFMOTO imports motorcycles, scooters, ATVs, and other recreational vehicles manufactured by the Chinese company CFMOTO Powers Co. Ltd. It is the exclusive United States importer of CFMOTO vehicles, which it distributes throughout the country via various dealers. Since April 2007, CFMOTO has imported more than 7,000 vehicles.

Customs and Border Protection ("CBP") is a component of the Department of Homeland Security. It has the authority to inspect merchandise entering the United States and seize and detain it if reasonable cause exists to believe such property violates some law or regulation. The Environmental Protection Agency ("EPA") works with the CBP to inspect goods for CAA compliance. EPA can recommend that nonconforming goods be seized by CBP. However, although EPA is sometimes involved in assessing whether imported merchandise complies with CAA regulations, CBP makes an independent decision to seize goods and does so pursuant to its own authority; this process is separate from any enforcement processes EPA may pursue.

In April and May of 2009, CFMOTO sought to import ten containers containing several hundred vehicles with a total wholesale value of approximately $550,000. On April 13, 2010, CBP sent a detention letter to CFMOTO regarding a shipment of 150 scooters, claiming they were detained for EPA violations. (See Compl. Ex. A.) In

addition to the shipment that was the subject of the CBP's April 13 letter, nine other containers were detained in April and May 2009.

The CBP later seized the detained vehicles on June 16 and June 30, 2009. In July 2009, CFMOTO received an e-mail from Robert Gregory at the EPA,[1] outlining why the vehicles were detained. (Compl. ¶ 13, Ex. B.) The primary reason Gregory outlined was invalid CAA Certificates of Conformity for the vehicles. See Clean Air Act, § 203(a), 42 U.S.C. § 7522(a) (prohibiting the sale, introduction, or delivery for introduction into commerce of any vehicle engine not covered by a Certificate of Conformity issued by the EPA and currently in effect). CFMOTO responded to this letter two weeks later, denying the alleged violations.

On August 5, 2009, CBP sent CFMOTO two notices that it had seized the vehicles detained on June 16, 2009, and June 30, 2009. (Compl. Ex. E.) These notices were virtually identical (except for the vehicle lists). They outlined CFMOTO's options to seek relief—(1) petition for administrative relief, (2) request that CBP begin administrative forfeiture proceedings, or (3) request that CBP refer the matter for Court action (a judicial forfeiture proceeding). Enclosed with each notice letter was an Election of Proceedings Form with three check-boxes corresponding to these three options. (See Compl. Ex. E; Mitchell Decl. Ex. A.) CFMOTO responded to CBP on September 2, 2009, disputing the detention and seizure of the vehicles and requesting "that CBP release

---

[1] CFMOTO later found out that Mr. Gregory, who was their "main contact person" at the EPA on this matter, was a law clerk and has since left the agency to take the bar exam and begin practicing law. (Compl. ¶ 27; Ex. I.)

its merchandise from seizure without further delay, penalties, or fines." (Compl. Ex. F; Mitchell Decl. Ex. B.)

Included with CFMOTO's response were (1) a completed Petition for Remission or Mitigation of Forfeitures and Penalties form, requesting that CBP consider its administrative petition for the property's release, and (2) an executed Election of Proceedings form, with the box for option #1 checked, requesting "that customs and border protection consider [its] petition or offer administratively." (Mitchell Decl. Ex. B.) The form provides that "[b]y making this request, I understand that I am giving up my right to (1) begin administrative forfeiture proceedings immediately . . . or (2) immediate referral of the case to the U.S. Attorney for court action." (Id.)

Six months later, CBP granted CFMOTO's Petition. In letters dated March 4, 2010, it indicated that it had reviewed the petitions (with respect to each of the two groups of vehicles) and determined that violations had occurred; however, it decided to "grant [the] petition[s] and release the merchandise for export only." (Compl. Ex. G.) The letters provided that CFMOTO would be required to pay mitigated forfeiture amounts for each shipment ($9,430 and $31,980, respectively), pay storage costs, sign a Hold Harmless Agreement, and file an export document with CBP showing that the vehicles would be taken out of the country upon their release. Finally, the letters indicated that if CBP did not receive the requested documents from CFMOTO within 60 days, forfeiture proceedings could be initiated.

On April 21, CFMOTO wrote CBP to request a calculation of the storage fees for the seized vehicles "in order . . . to properly assess the settlement offer in [CBP's] letters

4

of March 4, 2010." (Parker Aff. Ex. H.) It also requested a two-week extension of the 60-day time it had to respond to the offer. Ultimately, CFMOTO chose not to export its vehicles. Instead, it took the following steps. In June 2010, it filed a Claim for Damage, Injury, or Death (Department of Justice Standard Form 95) with the CBP, notifying the Government of a potential negligence claim. (Parker Aff. Ex. J.) Then, less than two months later, it filed the instant action in August 2010.

Events have continued to unfold since the Complaint was filed. On August 17, CBP notified CFMOTO that it would begin pursuing administrative forfeiture of the vehicles. (Parker Aff. Ex. K.) In order to do so, CBP was required to publish notice for three successive weeks; it intended to do so beginning on August 22. In the same letter, CBP notified CFMOTO that it could file claims to the property, along with cost bonds of $5,000 (one bond for each shipment), within 20 days of the publication of CBP's first notice. Around September 9, CFMOTO filed such claims and cost bonds, requesting that the matter be referred to the U.S. Attorney for filing of a judicial forfeiture action. (Parker Aff. Ex. L.) It asked that the forfeiture proceeding be commenced in Minnesota, as it had already filed the instant action in this Court, rather than in the Northern District of Texas where its seized goods are located. On September 17, CFMOTO also submitted to CBP two new Election of Proceedings forms with option #3—requesting that the case be referred for court action—selected. (Id. Ex. M.) At the time of the Government's Motion, CBP had not yet referred the matter to the U.S. Attorney in either the Northern District of Texas or the District of Minnesota. It has since referred it to the

5

U.S. Attorney for the Northern District of Texas, and a forfeiture action is "currently under consideration, but has not yet been filed."[2]  (Def. Supp. Mem. at 13.)

CFMOTO's Complaint contains seven separate counts.  Counts I–III assert procedural due process claims and seek declarations of CFMOTO's rights prior to future importation; Counts IV and VI seek declarations that CFMOTO's vehicles are in conformity and it is entitled to use and possession of them; Count V alleges negligence under the Federal Tort Claims Act ("FTCA"); and Count VII seeks an order compelling the Government to commence a judicial forfeiture action.  The Government now moves to dismiss the action for lack of subject-matter jurisdiction.  For the reasons set forth below, the Court will grant the Motion.

**STANDARD OF REVIEW**

The United States brings its Motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3]  There are two types of subject-matter-jurisdiction challenges under Rule 12(b)(1): "facial" attacks and "factual" attacks.  See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Hastings v. Wilson, Civ. No. 05-2566, 2007 WL 333617, at *3 (D. Minn. Feb. 1, 2007) (Kyle, J.).  A facial attack, as its name suggests, challenges subject-matter jurisdiction based solely on the allegations appearing on the face of the complaint.  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In ruling on

---

[2] According to CFMOTO, "the U.S. Attorney has acknowledged that he is obligated to initiate an action either in Minneapolis or Dallas, but is delaying filing of an action pending the decision of this Court" on the instant Motion, which was filed on October 15, 2010.  (Pl. Supp. Mem. at 11.)

[3] The United States also invoked Rules 12(b)(2), (b)(4), and (b)(5) for lack of personal jurisdiction, insufficient process and/or insufficient service or process.  (See Motion to Dismiss, Doc. No. 4.)  However, none is mentioned in its memoranda in support of the Motion.  Thus, the Court deems these arguments abandoned and will address only subject-matter jurisdiction.

such a motion, a court must afford the non-moving party the same protections to which it would be entitled to under Rule 12(b)(6). Id. By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject-matter jurisdiction exists; a court may rely upon matters outside the pleadings when considering such an attack, and the non-moving party does not receive the benefit of Rule 12(b)(6)'s safeguards. Id.

Neither party has addressed this issue in its moving papers. It appears that at least some of the underlying questions about subject-matter jurisdiction turn on factual disputes (such as whether proper notice was given for the FTCA claim). CFMOTO has submitted numerous documents in opposition to the Motion, some of which were not attached to its Complaint. (See Parker Aff. & Exs.) Thus, the Court will treat this Motion as a factual attack.

## ANALYSIS

### I. Due Process claims (Counts I–III)

The first three counts of CFMOTO's Complaint assert procedural-due-process claims[4] under the Fourteenth Amendment.[5] The Government argues that the Court lacks jurisdiction over these claims. The Court agrees.

---

[4] The actual claims on the face of the Complaint are somewhat cryptic. Each alleges the breach of a duty—namely, duties "to act within a reasonable time" (Count I), "in regard to certificate of conformity enforcement" (Count II), and "in regard to certificate of conformity revisions" (Count III). Count I alleges a breach by both the EPA and CBP, while Counts II and III name only the EPA. CFMOTO has since clarified that these three claims are, in fact, procedural due process claims (see Mem. in Opp'n at 19), so the Court will treat them as such.

[5] As the Government correctly points out, the Fourteenth Amendment's Due Process Clause applies to the states, while the Fifth Amendment's Due Process Clause applies to the federal government. CFMOTO repeatedly asserts that Counts I–III are Fourteenth Amendment due-process claims. But there is no state action here which would support a Fourteenth Amendment

7

The Government argues extensively that the doctrine of sovereign immunity bars these claims. The Court need not search for a sovereign-immunity waiver, however. Even if there is an applicable waiver here, the Court may not hear the claims for another reason the Government identifies. Counts I–III seek declarations of CFMOTO's future rights under the applicable laws and regulations "prior to further importation." (Compl. ¶¶ 46, 53, 60.) Because they seek only declarations of rights relative to importing vehicles in the future, CFMOTO's first three claims are not ripe.

Article III of the U.S. Constitution limits federal jurisdiction to actual cases and controversies. The rationale for the ripeness doctrine is to prevent federal courts from "entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200 (1983) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967)). Although CFMOTO has undoubtedly felt the effects of CBP's seizure of its *already-imported* vehicles, the first three claims of its Complaint seek no relief related to those vehicles. Instead, by its very pleading, CFMOTO's first three claims simply seek declarations of its rights "prior to future importation." The claims are therefore not ripe, and the Court lacks jurisdiction to consider them. See Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as

---

claim, since the only Defendants in the case are federal agencies. This alone could lead the Court to dismiss those claims. Nonetheless, the Court will give CFMOTO the benefit of the doubt and analyze the claims as though asserted under the Fifth Amendment.

anticipated, or indeed may not occur at all.'") (citations omitted); Int'l Custom Prods., Inc. v. United States, 29 Ct. Int'l Trade 1292, 1299 (2005) (finding importer's claim not ripe where it sought relief with respect to future imports).

CFMOTO briefly argues that § 304 of the CAA, 42 U.S.C. § 7604, is a basis for subject-matter jurisdiction over its claims. (Opp'n Mem. at 29.) The CAA does create a right of action under certain circumstances. However, nothing in the Complaint even remotely suggests that any of the claims were brought under the CAA. The Court will not permit CFMOTO to redefine its claims in an attempt to avoid dismissal.[6]

## II. FTCA claim (Count V)

Count V of the Complaint alleges negligence by government employees under the FTCA. The Government argues that subject-matter jurisdiction is lacking over this claim, and the Court agrees.

The doctrine of sovereign immunity provides that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). Sovereign immunity is "jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for

---

[6] It is one thing to recognize the claims as due-process claims, where there are at least references in the Complaint to CFMOTO's "due process" rights. (See Compl. ¶¶ 34, 53.) It is yet another to recognize CAA claims where the Complaint fails to make even a passing mention of the citizen-suit provisions of the CAA in setting forth the claims.

jurisdiction."). Its protection extends to government agencies as well as the government itself. E.g., Meyer, 510 U.S. at 475. Sovereign-immunity waivers "are to be 'construed strictly in favor of the sovereign and not enlarged beyond what the language requires.'" Van Wyhe v. Reisch, 581 F.3d 639, 653 (8th Cir. 2009) (citing United States v. Nordic Vill., Inc., 503 U.S. 30, 34 (1992)). When Congress does consent to suits against the government, it can define the terms and conditions under which they may be maintained. E.g., United States v. Kubrick, 444 U.S. 111, 117–18 (1979) (waiver of sovereign immunity for FTCA claims is conditioned on a statute of limitations, for example).

The FTCA waives sovereign immunity by providing that the United States will be liable just like a private individual "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment." 28 U.S.C. § 1346(b). However, to maintain an FTCA claim, one must first satisfy certain statutory prerequisites. See 28 U.S.C. § 2675(a) ("An action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."). Satisfying these prerequisites is known as "administrative exhaustion," Lunsford v. United States, 570 F.2d 221, 224 (8th Cir. 1977), which is a jurisdictional requirement to suit in federal court. See, e.g., McNeil v. United States, 508 U.S. 106, 113 (1993). The Government claims CFMOTO failed to satisfy both FTCA prerequisites: (1) presenting (or giving notice of) the claim, and (2) waiting for the agency's denial.

CFMOTO argues that it first "presented" its claim to the Government in a letter to the EPA dated July 14, 2009. The only portion of this letter referencing a legal claim is the last paragraph, which states:

> [CFMOTO] continues to incur significant damages on a daily basis. This matter needs to be resolved this week to avoid the initiation of a legal action. As you can understand CFMoto Powersports is being left with no recourse other than to a court of law.

(Parker Aff. Ex. C.) In the Court's view, this is not sufficient notice of CFMOTO's claim to satisfy § 2675(a). It makes no reference to any specific claim against the EPA (i.e., negligence) nor does it so much as allude to the FTCA. Moreover, the applicable regulations require that the claim be "for money damages in a sum certain." 40 C.F.R. § 10.2(a); 28 C.F.R. §14.2(a); accord Lunsford, 570 F.2d at 226 ("Numerous cases have been dismissed for failure of the individual claimant to state a sum certain in his administrative claim.") (citations omitted). This letter does not contain even a general estimate of damages, let alone a sum certain.

CFMOTO argues that it also "presented" the claim in the Department of Justice's Standard Form 95—the form specifically titled "Claim for Damage, Injury, or Death"—which it submitted to CBP on June 17, 2010.[7] (Parker Aff. Ex. J.) The Government argues that this notice is also insufficient because it does not clearly state a sum certain. But the Court need not determine whether the claim presented via Form 95 stated a sum certain because, by CFMOTO's own admission, there was no denial of its claim for

---

[7] CFMOTO tries to frame this notice as a "supplement" to its June 2009 letter to the EPA, in an apparent attempt to transform the original letter into a notice of claim as required under the FTCA. (Mem. in Opp'n at 23.) In the Court's view, the two are unrelated.

damages prior to this lawsuit being filed on August 2, 2010.[8] Thus, even if the June 17, 2010, notice does state a sum certain and satisfy the first prerequisite (presentment), the second prerequisite (denial) is un-met because only two months passed between CFMOTO's submission of the Form 95 and its filing the instant action and there was no written denial issued.[9]

CFMOTO failed to satisfy the statutory prerequisites set forth in § 2675(a) before bringing its FTCA claim. Accordingly, the Court lacks jurisdiction over the claim.

### III. Declaratory-judgment claims (Counts IV and VI)

Counts IV and VI of CFMOTO's Complaint both invoke the Declaratory Judgment Act, 28 U.S.C. § 2201. Count IV seeks an order declaring (among other things) that the carburetors in its vehicles conform with their Certificates of Conformity and that it is entitled to import them.[10] Count VI also invokes § 2201 and seeks a

---

[8] Inaction for six months can be deemed denial for purposes of exhausting and FTCA claim. See 28 U.S.C. § 2675(a) ("[T]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim."). Here, less than two months passed between the purported notice and CFMOTO's filing this action.

[9] CFMOTO argued at the January 28 hearing on this Motion that it could simply re-file its FTCA claim, since more than six months have now passed since it presented its claim. Assuming the other statutory prerequisites are met and no exceptions apply (which the Court does not decide at this time), its assertion is correct. Nevertheless, this is a Court of limited jurisdiction; in the absence of jurisdiction (even based on technical failures), it is powerless to act.

[10] The language in Count IV is similar to that in Counts I–III, seeking declarations "prior to future importation." (Compl. ¶ 72.) However, unlike the first three counts, the declarations sought in Counts IV and VI arguably "relate[] to the importation of the currently seized vehicles. CFMOTO is not seeking any future determinations . . . ." (Mem. in Opp'n at 31.) Thus, these two claims do not pose the same ripeness problem.

declaration that CFMOTO "is entitled to possession and use of its motor vehicles free of any lien or encumbrance from defendants." (Compl. ¶ 87.)

The Declaratory Judgment Act provides that a federal court may grant declaratory relief in "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. It does not "extend federal court jurisdiction beyond the recognized boundaries of justiciability, but only 'enlarged the range of remedies available.'" Pub. Water Supply Dist. No. 10 of Cass Cnty., Mo. v. City of Peculiar, 345 F.3d 570, 572 (8th Cir. 2003) (quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)). Stated differently, the Declaratory Judgment Act creates a remedy; it does not establish jurisdiction or waive sovereign immunity in the absence of some other valid claim. See Pub. Water Supply, 345 F.3d at 572; Reuth v. U.S. Env't Protection Agency, 13 F.3d 227, 231 (7th Cir. 1993) ("The Declaratory Judgment Act . . . is not an independent grant of jurisdiction, rather jurisdiction must be predicated on some other statute.").

Because the Court lacks jurisdiction over all of the other claims in this action, for the reasons discussed herein, there is no "case of actual controversy *within its jurisdiction*." There is no claim to which the remedy created by the Declaratory Judgment Act can attach, and the declaratory-judgment claims provide no independent basis for subject-matter jurisdiction.

**IV.  Equitable-relief claim to compel judicial forfeiture action (Count VII)**

Finally, the Court reaches the claim that appears to lie at the heart of this dispute. In Count VII, CFMOTO "seeks the equitable relief . . . to compel the filing of forfeitures of [its vehicles]." (Compl. ¶ 93.) A judicial forfeiture action is one of the appropriate

13

avenues through which CFMOTO may seek relief for the seizure of its imported goods under the Tariff Act. See 19 U.S.C. § 1608. Indeed, the Government acknowledges this right and has even conceded that a judicial forfeiture action "is the proper forum to challenge CBP's seizure." (Def. Supp. Mem. at 10.) However, while all the parties and the Court may agree that this dispute would be best addressed in a forfeiture action, this does not mean the Court has jurisdiction to compel the Government to file such an action.

The Government acknowledges that an unreasonable delay between seizing property and filing a forfeiture action in which the interested party can challenge the seizure may violate the right to due process. (See Def. Supp. Mem. at 13 (citing United States v. Eight Thousand Eight Hundred & Fifty Dollars, 461 U.S. 555, 564–67 (1983)).) Nonetheless, it argues that there has not been such a claim alleged here. The Court agrees. Count VII does not even invoke the due process clause, and the earlier claims which do purport to invoke due process allege nothing about unreasonable delay in filing a forfeiture action. CFMOTO cannot simply demand the relief it wants—compelling a forfeiture action—without an underlying claim.[11]

Moreover, even if CFMOTO had brought an appropriate due-process claim, the facts here would not support such a claim. When CFMOTO's vehicles were seized, it was informed of its three options. In fact, they were clearly presented and had

---

[11] CFMOTO argues that it has the right to "file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized party." (Pl. Supp. Mem. at 12.) It relies on Slocum v. Mayberry, 15 U.S. 1, 10 (1817), which stated: "If the seizing officer should refuse to institute proceedings to ascertain the forfeiture, the district court may, upon the application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the seizure." In the Court's view, this general pronouncement—made more than a century before the Tarriff Act was even enacted—does not give CFMOTO the right to simply demand an order compelling a forfeiture action in the absence of an appropriate claim.

corresponding check-boxes on the Election of Proceedings Form CBP provided to CFMOTO. Initially, CFMOTO chose to pursue an administrative petition for relief. By selecting this path (Option #1 on the Form), CFMOTO agreed to give up its right to immediately seek relief through either of the other two avenues—including referral for judicial forfeiture. The form further provided that CFMOTO "understands that *at any time* [it] can file a claim and cost bond with Customs and Customs[']s] consideration of [its] petition or offer will stop and the case will be sent to the U.S. attorney for court action." (Parker Aff. Ex. M.) Thus, CFMOTO waived its right to an immediate forfeiture action in September 2009. Furthermore, it knew what it had to do to request referral for a judicial forfeiture action—file a claim and cost bond with the CBP. However, at no time between September 2009 and filing this action did CFMOTO take these steps.

Since then, CFMOTO has filed new Election of Proceedings Forms with Option #3 selected to request that the matter be referred to the U.S. Attorney for filing of a judicial forfeiture action. It did not do so until <u>after</u> commencing the instant action, however. It is difficult to see how CFMOTO could claim unreasonable delay when it had not requested referral for judicial forfeiture at the time this action was filed and, in fact, had previously waived that right. Moreover, when CFMOTO did request that CBP refer the matter to the U.S. Attorney, it specifically asked that forfeiture proceedings be commenced here in Minnesota (since, at that time, it had already filed the instant action in this Court). Typically, forfeiture proceedings take place in the district where the

15

property is located; thus, by trying to specify the venue, CFMOTO may have contributed to delay by CBP or the U.S. Attorney's office in deciding how to proceed.

In any event, the parties inform the Court that the matter has now been referred to the U.S. Attorney for the Northern District of Texas, and the Court has no reason to believe that a judicial forfeiture action will not be commenced promptly in that district.[12] That is the appropriate avenue for CFMOTO to seek relief. It will have the opportunity to raise defenses to the seizure of its goods in that proceeding, as well as assert its FTCA claims, due process claims, and other potential claims. If a forfeiture action is not filed within a reasonable time (now that it has been elected and is no longer waived), <u>then</u> CFMOTO may bring an appropriate due-process claim seeking the equitable relief it asserts in Count VII. No such claim is before the Court at this time, however, and the Court lacks jurisdiction to compel the filing of a forfeiture action absent a proper claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 4) is **GRANTED** and CFMOTO's Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 31, 2011                          s/Richard H. Kyle
                                                               RICHARD H. KYLE
                                                               United States District Judge

---

[12] Alternatively, as the Government explained at oral argument, if the U.S. Attorney determines after review that a forfeiture action is inappropriate, the vehicles will be returned to CFMOTO.